UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-22825-CIV-KING

MARIA ELENA LLANA-ADAY,

    Plaintiff,

v.

DISTRICT BOARD OF TRUSTEES OF
MIAMI-DADE COLLEGE,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendant's Motion for Final Summary Judgment (DE #26), filed September 3, 2012. Therein, Defendant District Board of Trustees of Miami-Dade College seeks summary judgment on all counts. The Court is fully briefed in the matter.[1] Upon careful consideration of the record and the briefings, the Court finds that Defendant is entitled to judgment as a matter of law and the Motion should be granted.

### I. BACKGROUND

The following facts are undisputed.[2] Plaintiff Maria Elena Llana-Aday ("Llana-Aday") worked as a retention and recruitment specialist in the Adult Education Program of Defendant District Board of Trustees of Miami-Dade College ("MDC"). Plaintiff was

---

[1] Plaintiff filed a Response (DE #33) on October 5, 2012. Defendant replied (DE #37) on October 12, 2012.

[2] These facts are taken from Defendant MDC's Statement of Material Facts (Def. SOF, DE #25), Plaintiff Llana-Aday's Response thereto (Pl. SOF, DE #34), and the exhibits attached to both.

1

one of four individuals—two male, two female—who held this position at MDC's North Campus during the 2008–2009 school year. In July 2009, Defendant terminated Plaintiff's employment and that of the other female retention and recruitment specialist, Tammie Howard ("Howard").

Earlier that spring, MDC North Campus Adult Education Program Director Cheryl Garayta ("Garayta") and Barbara Alfonso ("Alfonso"), Garayta's supervisor, had discussed the possibility of needing to switch all recruitment and retention specialists to "split shifts." Working a split shift involves teaching a class from 9 a.m. to 12 p.m. and another class from 6 p.m. to 9 p.m., for a total of 24 hours a week; instructors are also responsible for weekly spending 13.5 hours prepping for class and advising students. Geoff Gathercole ("Gathercole"), director of the School of Community Education, had encouraged department chairs to implement split shifts for the upcoming year. At the time, Alfonso expressed to Garayta skepticism about Llana-Aday's and Howard's ability to work a split shift because they have young children to care for.

On July 23, 2009, Gathercole sent an email to Alfonso and others indicating that MDC's Adult Education Grant for the upcoming fiscal year had been reduced by nearly 33 percent, from $1,458,920 to $987,117. Alfonso forwarded this email to Garayta and instructed her to spend the weekend devising a solution to the budget reduction. Garayta proposed reducing the number of full-time instructors to two and requiring each to work split shifts. Alfonso approved Garayta's proposal and instructed her to determine which two specialists to retain.

Garayta chose Rick Vargas ("Vargas") and Bernardo Rodriguez ("Rodriguez") because "both stated that they could work split shifts and did work split shifts to the end of the grant year." (Garayta Email to Alfonso of 7/29/09, Ex. E, DE #25-5). Conversely, Howard "had indicated difficulty with the possibility of split shifts based on distance and travel time" and Llana-Aday "had said on several occasions . . . that the day she was asked to work four nights a week would be the day that she resigned." (*Id.*) On July 27, 2009, Garayta emailed her friend Llana-Aday to inform her that, despite "invaluable" contributions to the Adult Education Program's success, her employment would end on August 7, before the fall semester began. (Garayta Email to Aday of 7/27/09, Ex. F, DE #25-6).

Llana-Aday contacted MDC's human resources department, which had not been notified of the firing decisions. Human resources cancelled the termination actions and re-opened the two positions, renaming the job as Instruction Retention Transition Specialist. Human resources invited the four former retention and recruitment specialists to apply for the two new full-time split-shift positions.[3] Llana-Aday, Rodriguez, and Vargas each applied; Howard, the other female specialist, did not. The candidates were interviewed by Garayta, Alfonso, and Susan Dow, the college-wide director of adult education. Each candidate was asked nine form questions and scored on a scale of 1 (poor

---

[3] Whether MDC's subsequent action against Llana-Aday amounted to refusing to hire her or terminating her employment is immaterial to the resolution of this case. For clarity and consistency, the Court refers to the action as one of terminating employment.

3

answers) to 5 (excellent answers).[4] Only one question, No. 8, asked anything about the candidate's opinion of split shifts: "Please elaborate on any prior experience you have which involved working a 'split-schedule,' and if so, what did you see as any advantages or disadvantages of working such a schedule?" (Ex. I, DE #25-9). Of the three candidates, only Llana-Aday expressed any reservations during the interview about working a split shift.[5] Though Llana-Aday did not refuse to work a split shift, she said that she was concerned about her ability to advise students, which is a crucial component of the job, on such a schedule.

Alfonso, Dow, and Garayta each scored Rodriguez highest. Alfonso ranked Vargas second; Dow and Garayta found Llana-Aday more impressive. However, Garayta removed herself from voting,[6] leaving a tie between Llana-Aday and Vargas. To break the tie, Alfonso called Gathercole, who told Alfonso that, as department chair, she had final say. She chose to keep Vargas. As Alfonso later stated, she thought that Vargas came across as more personally committed to the job. She "was also concerned about Question 8." Alfonso had given Llana-Aday a 2 on the split-shift question; Vargas received a 5.

---

[4] Alfonso scored each of the first eight questions on that scale and provided no marks for the ninth question; Dow gave only an overall score of 1 to 5. It is unclear from the record how Garayta scored the candidates.
[5] Both Rodriguez and Vargas also had complained previously about the nature of split shifts. But there is no evidence that this information was known by MDC's decisionmakers.
[6] Two years later, after her contract was not renewed, Garayta brought a 42 U.S.C. § 1983 whistleblower lawsuit against MDC officials for the alleged misuse of federal grant money. *Garayta v. Gathercole et al.*, No. 11-22691-CIV-KMM (DE #1). However, rather than respond to the defendants' motion for summary judgment, Garayta voluntarily dismissed her claims with prejudice, the only apparent settlement terms being that both sides would bear their own fees and costs. *See* (DE #37). Garayta was represented then by the same counsel as Plaintiff in the above-styled action.

Llana-Aday, however, suspected that the decision to terminate her employment was based on MDC's belief that, as a woman with young children, she would be unwilling or unable to work a split shift. Llana-Aday obtained a right-to-sue letter from the Equal Employment Opportunity Commission in May 2011. She filed the above-styled action on August 5, 2011, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. 1681, *et seq.*, and the Florida Civil Rights Act, Fla. Stat. 760.01, *et seq.*[7] Defendant MDC now seeks summary judgment on all counts.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24.

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also*

---

[7] Tammie Howard, the other female specialist, is not a party to this or any known related action.

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

### III. DISCUSSION

Plaintiff brings her claims under three statutes: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. 1681, *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. 760.01, *et seq.* Title VII and the FCRA make it illegal for any employer to refuse to hire or to discharge any individual "or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10. Title IX prohibits sex discrimination in any federally funded

6

educational program. 20 U.S.C. § 1681. The protection applies both to students and employees of those programs. *See North Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 530, 102 S. Ct. 1912 (1982). However, in analyzing both Title IX and FCRA claims, courts apply Title VII standards.[8] Because the evaluation of Plaintiff's Title VII claims will be identical to that of the Title IX and FCRA claims, the Court's discussion will focus on Plaintiff's claims under Title VII.

In asserting a claim for gender discrimination, a plaintiff bears the initial burden of establishing a prima facie discrimination claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). If the plaintiff does so, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Finally, "if the defendant 'proffers a legitimate, non-retaliatory reason for its employment decision,' the presumption is rebutted and the burden shifts back to the plaintiff to prove that the defendant's reason was pretext." *Dalton v. State of Fla., Dep't of Highway Safety and Motor Vehicles*, No. 11-23127-CIV, 2012 WL 5306313, at *6 (S.D. Fla. Oct. 26, 2012) (quoting *Mandeville v. City of Coral Gables*, 50 F. Supp. 2d 1320, 1331 (S.D. Fla. 1999)); *see also McDonnell Douglas*, 411 U.S. at 806.

---

[8] "It is well established that 'for employment discrimination cases, the Title VII standards for proving discriminatory treatment should apply to claims arising under Title IX.'" *Ren v. Univ. of Cent. Florida Bd. of Trustees*, 390 F. Supp. 2d 1223, 1235 (M.D. Fla. 2005) (quoting *Brine v. Univ. of Iowa*, 90 F.3d 271, 276 (8th Cir. 1996)); *see also Shuford v. Ala. State Bd. of Educ.*, 968 F.Supp. 1486, 1503-04 (M.D. Ala. 1997) ("[W]hether the defendants have violated the Education Amendments of 1972 will be determined by traditional Title VII analysis."); *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995) (stating that, "whether for sexual harassment or retaliation, courts have generally adopted the same legal standards that are applied to such claims under Title VII" and citing to opinions by the First, Fourth and Tenth Circuits that have held accordingly). Title VII is even more clearly applicable to the FCRA, as "the Florida act was patterned after Title VII." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387, (11th Cir. 1998).

### A. *Plaintiff has Not Established a Prima Facie Discrimination Claim*

To establish a prima facie discrimination claim, a plaintiff must demonstrate that: "(1) she belongs to a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). Evidence may be circumstantial, but the plaintiff must "establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "Personal opinions and conclusory allegations, in the absence of supporting evidence, are insufficient to withstand summary judgment." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1365 (M.D. Fla. 2001) (citing *Holifield*, 115 F.3d at 1354, n. 6).

In the above-styled action, Plaintiff belongs to a protected class based on her gender. *See* 42 U.S.C. § 2000e-2(a)(1). Termination of Plaintiff's employment was clearly an adverse employment action. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). And the parties do not dispute that Plaintiff was qualified for the job.[9] However, a closer question is whether Plaintiff put forth evidence that the men treated more favorably were similarly situated to her.[10]

---

[9] Defendant, though, argues that Plaintiff was less qualified than the men retained. (Dow Dep., Ex. L, p. 18, DE #25-12; Alfonso Dep., Ex. C, p. 47, DE #25-3; Def. Mot., DE #26, pp.12-13).

[10] Plaintiff argues at length in her Response that the record is replete with direct evidence of gender discrimination. The Court disagrees and notes that the cases Plaintiff cites for examples of such direct evidence, *Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971), and *International Union, et al. v. Johnson Controls, Inc.*, 499 U.S. 187 (1991), are inapposite because both involved the express exclusion of women from specific jobs based solely on their status as women.

Plaintiff and her comparators must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *see also Wilson*, 376 F.3d at 1091. The record facts demonstrate that where Defendant's decisionmakers were aware of Plaintiff's opposition to working a split shift, they were unaware of any concerns about working a split shift from the two men retained, Rodriguez and Vargas. In fact, both Rodriguez and Vargas had worked split shifts through the end of the previous grant year. *See* (Ex. E, DE #25-5). When they applied to retain their jobs, neither expressed reservations about again working a split shift or any challenges that the schedule imposes on student advising, a crucial aspect of the position. Conversely, Plaintiff's statement that she would resign before working a split shift had been relayed to Defendant's decisionmakers (Ex. E, DE #25-5); though she still applied to keep her job, Plaintiff said during her interview that she was concerned the new schedule would reduce the time available for student advising. (Dow Dep., Ex. L, p. 26, DE #25-12).

The Court, however, need not determine whether Plaintiff has presented evidence demonstrating she was similarly situated to her comparators for a standard sex discrimination claim because this case is properly understood as alleging "sex-plus" or "gender-plus" discrimination claims.

Plaintiff has alleged that Defendant fired her not simply because she is a woman but because she is a woman with young children and, in light of motherly duties, would be unwilling or unable to work a split shift. *See* (Pl. SOF, DE #34, p. 2; Pl. Resp., DE #33, p. 5); *see also* (Pl. Resp., p. 7) ("Defendant possibly discriminated against [Plaintiff]

9

because she was a mother and had responsibility for her child."). This theory implicates the heightened standard for a "sex-plus" or "gender-plus" discrimination claim, which involves the "classification of employees on the basis of sex plus one other ostensibly neutral characteristic." *Willingham v. Macon Tel. Pub. Co.*, 507 F.2d 1084, 1089 (5th Cir. 1975). "'Gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender. Such plaintiffs cannot make the requisite showing that they were treated differently from similarly situated members of the opposite gender.'" *Longariello v. School Bd. of Monroe County, Fla.*, 987 F. Supp. 1440, 1449 (S.D. Fla. 1997) (quoting *Coleman v. B-G Maintenance Management of Colorado, Inc.*, 108 F.3d 1199, 1204 (10th Cir. 1997)). Here, the "plus" characteristic would be the responsibility of caring for a young child. Plaintiff does not allege that Rodriguez and Vargas had such a responsibility.[11] Thus, even if Plaintiff proved that she and her comparators were similarly situated for a standard sex discrimination claim, she has not successfully demonstrated this for a sex-plus claim.

### B. *Plaintiff's Evidence of Pretext Would Raise Triable Issues of Material Facts*

Assuming that Plaintiff had established a prima facie claim, the burden would shift to Defendant to proffer a legitimate, non-discriminatory basis for terminating Plaintiff's employment. Defendant has averred that it terminated Plaintiff's employment because she expressed reservations about her ability to perform certain job duties on the new split shift schedule; Rodriguez and Vargas expressed no such reservations and in fact had

---

[11] Plaintiff's Response states that Rodriguez has no children and Vargas has a stepdaughter, but does not claim that Vargas was responsible for her care. (Pl. Resp., p. 5).

experience working split shifts. Accordingly, Defendant has stated a legitimate, non-discriminatory basis for the adverse employment action against Plaintiff, shifting the burden back to Plaintiff to demonstrate that the proffered reason was pretext for a discriminatory purpose.

A plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089 (1981). "To survive a motion for summary judgment, the plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Webb v. R & B Holding Co. Inc.*, 992 F. Supp. 1382, 1386 (S.D. Fla. 1998) (quoting *Cooper–Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir.1994) (internal citation omitted)).

In opposing Defendant's Motion for Summary Judgment, Plaintiff argues that "[t]his case bristles with pretext," (Pl. Resp., p. 11), evidenced by Defendant giving inconsistent reasons for choosing to terminate Plaintiff's employment; deviating from standard hiring and firing procedures; and choosing a candidate less qualified than Plaintiff. Precedent in the Eleventh Circuit indicates that each of these facts, which on a motion for summary judgment are construed in the light most favorable to Plaintiff, could serve as evidence of pretext. *See Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298-99 (11th Cir. 2006) ("[A]n employer's failure to articulate clearly and

consistently the reason for an employee's discharge may serve as evidence of pretext."); *Id.* at 1299 ("[A]n employer's deviation from its own standard procedures may serve as evidence of pretext."); *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) ("Under this Court's decisions, qualifications evidence may suffice, at least in some circumstances, to show pretext.").

Though Plaintiff's pretextual argument based on the consistency of Defendant's reason for firing Llana-Aday is unavailing,[12] Plaintiff has at least presented triable issues of fact as to the other two circumstances that Plaintiff says demonstrate pretext. First, MDC twice deviated from its standard procedures, initially firing two employees without consulting human resources and then opening the positions back up for the two previously fired and two previously retained employees to apply for. Coupled with the deposition testimony of Garayta that, after hearing from human resources, Alfonso told her they need to get their stories straight as to why they chose the two men and not the two women, a reasonable jury could find that the re-application process was s sham and, accordingly, Defendant's proffered reason was unworthy of credence. Second, Plaintiff has raised a genuine issue of fact as to whether she was more qualified than Vargas.

However, as noted by the Court, Plaintiff has not overcome her prima facie burden. That is dispositive of Defendant's Motion and thus, under the *McDonnell Douglas* framework, the Court's decision is not guided by whether there is a triable issue

---

[12] The record evidence is clear about Defendant's stated reason for retaining Rodriguez and Vargas over Llana-Aday. Neither of the male applicants expressed any reservations about working a split shift; she did. Plaintiff has not revealed a lack of clarity or inconsistency in Defendant's explanation by noting that Defendant's decisionmakers also said that "Vargas was a stronger candidate overall" or that he seemed more personally committed to the position. Both of those statements are intertwined with the candidates' feelings about working a split shift.

of material fact on the element of pretext. Defendant is entitled to judgment as a matter of law because Plaintiff has not sustained a prima facie claim for sex-plus discrimination.

## IV. CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's Motion for Final Summary Judgment (**DE #26**) be, and is hereby, **GRANTED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 16th day of November, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Cc:

*Counsel for Plaintiff*

**Louis Michael Jepeway, Jr.**
Jepeway and Jepeway, P.A.
Suite 407
19 W Flagler Street
Miami, FL 33130
305-377-2356
Fax: 305-377-2324
Email: lmjepeway@aol.com

*Counsel for Defendant*

**Suzanne Ashelle Singer**
Rumberger Kirk & Caldwell

Brickell Bayview Centre
80 SW 8th Street
Suite 3000
Miami, FL 33130-3047
305-995-5428
Fax: 371-7580
Email: ssinger@rumberger.com

**Brooke Lisa Ehrlich**
Rumberger Kirk & Caldwell
Brickell Bayview Centre
80 SW 8th Street
Suite 3000
Miami, FL 33130-3047
305 358 5577
Email: behrlich@rumberger.com